UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| **CASE NO.:** CV 17-02278 SJO (SHKx) | **DATE:** January 10, 2018 |
| **TITLE:** Yusaf I. Amlani v. Baker's Burgers, Inc. | |

======================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

| **COUNSEL PRESENT FOR PLAINTIFF:** | **COUNSEL PRESENT FOR DEFENDANT:** |
|---|---|
| Not Present | Not Present |

======================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REMANDING ACTION TO THE SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF SAN BERNARDINO** [Docket No. 16]

This matter is before the Court on Plaintiff Yusaf I. Amlani's ("Amlani" or "Plaintiff") Motion to Remand Action Due to Lack of Subject Matter Jurisdiction ("Motion") filed on November 27, 2017. Defendants filed an Opposition ("Opposition") on October 2, 2017, to which Plaintiff replied ("Reply") on October 10, 2017. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for January 8, 2017. *See* Fed R. Civ P. 78(b). For the following reasons, the Court **GRANTS** Plaintiff's Motion and **REMANDS** this action to the Superior Court of California for the County of San Bernardino.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 2017, Plaintiff initiated the instant action again Defendant Baker's Burgers, Inc. ("Baker's Burgers") and Does 1-20 in the Superior Court for the State of California, County of San Bernardino. (Notice of Removal ("Notice"), Ex. A, Compl. ("Complaint"), ECF No. 1-1.) Plaintiffs' Complaint alleges a single cause of action: breach of contract. (*See generally* Compl.) In brief, the Complaint alleges that, after employing Plaintiff as an executive for over 30 years, Defendant failed to pay severance benefits upon the termination of his employment.

In 1988, Mr. Amlani and the owner of Baker's Burgers, Neal Baker, entered into a "handshake" agreement that Plaintiff would be paid one percent of the company's net sales for his services. (Compl. ¶ 18.) This informal arrangement continued for approximately the next 18 years. (Compl. ¶ 18.) In 2006, Plaintiff and Mr. Baker entered into a written Employee Benefits Agreement ("EBA"). (Compl ¶ 19.) Pursuant to the EBA, Plaintiff and Defendant obtained a $2,000,000 life insurance policy on Plaintiff's life, each owning a one-half interest in the policy and each paying one-half of the annual policy premium (referred to as the "Split Dollar Agreement"). (Compl. ¶ 21.) The EBA also contained provisions that would provide Plaintiff with additional benefits in the event of a termination with or without cause. (Compl. ¶ 22.) In the event of termination without cause, Defendant agred to provide:

> (a) payment of [Plaintiff's] regular salary, at the rate paid as of the date of termination, for one year, commencing on the date such termination is effective;
> (b) continued benefits provided as of the termination date for an additional year including, but not limited to, basic family health, dental, and major medical insurance coverage, life insurance, and/or disability insurance; and
> (c) continued payment, for one year, of Defendant's portion of the insurance policy premiums set forth in the Split Dollar Agreement.

(Compl. ¶ 22.)

After Mr. Baker's death in 2008, his wife took over as President of Baker's Burgers and entered into a written Employment Agreement ("EA") with Plaintiff intended to memorialize the "handshake" agreement that had been in place since he joined the company. (Compl. ¶¶ 25-26.) Under the terms of the EA, Plaintiff was given a base salary of $33,333.00 per month plus a monthly performance bonus equal to one percent of Defendant's net sales less the amount paid in base salary. (Compl. ¶ 29.) The Employment Agreement further provided for an annual bonus based on the increase in net income from restaurants ("NIR") and rent paid by Defendant to Neal T. Baker Enterprises. (Compl. ¶ 31.) Defendant established an Executive Compensation Committee to prepare financial statements that fairly reflect these amounts for the purposes of calculating executive bonuses. (Compl. ¶ 31.)

The Employment agreement provided numerous additional benefits, including: (1) a lump sum retention bonus on the third anniversary of the Employment Agreement; (2) a transaction bonus in the event of a sale, merger, transfer or conveyance of the company, its stock, or a substantial portion of its assets; (3) a new automobile every two years, annual expense reimbursements for conferences and continuing education as well as entertainment and meal-related expenses; (4) fringe benefits including the availability of group life and health insurance as well as the payment of 100% of the premium for Plaintiff's health and disability insurance; and (5) five weeks per year of vacation time. (Compl. ¶¶ 32-39.)

Finally, paragraph 7 of the EA states that:

> On the seventh anniversary of the Effective Date [of the EA], Executive shall vest in (i) a Longevity Severance Payment in an amount equal to 1.68 times Executive's base salary and fringe benefits paid during the seventh year of this Agreement, and (ii) the right to have Company pay Company's portion of the split dollar insurance premiums for two years beyond that required by the Split Dollar Agreement; provided, however, that such vesting shall not occur if the Net Sales for the Company during the fiscal year ending immediately before the date which is seven years from the Effective Date of this Agreement is twenty percent (20%) or more below the Net Sales for the fiscal year beginning April 1, 2007 and ending March 31.

(Compl. ¶ 45.)

In 2015, the parties agreed to cancel the $2,000,000 life insurance policy on Plaintiff's life. One-half of the cash value of the policy was payable to Defendant and one-half payable to Plaintiff. (Compl. ¶ 40.) As consideration for cancelling the regular premium payments, Defendant agreed to pay Plaintiff $1,396.61 per month through January 31, 2019, consistent with the original EBA. (Compl. ¶ 41.)

On March 14, 2017, Plaintiff elected to terminate his employment without cause and gave Defendant ninety days written notice. (Compl. ¶ 42.) His resignation was effective June 13, 2017. (Compl. ¶ 42.) Upon his termination without cause, Plaintiff alleges that he became entitled to (1) severance benefits as described in the EBA and incorporated by reference into the EA and, (2) if vested, a longevity severance payment pursuant to the EA. (Compl. ¶¶ 43-45.) Plaintiff alleges that Defendant has refused to pay the full amount of these benefits. (Compl. ¶ 49.)

On November 8, 2017, Defendant removed the state action to this Court pursuant to 28 U.S.C. § 1331, 1441, and 1446, asserting complete preemption of Plaintiff's claims under the Employment Retirement Income Security Act of 1974 ("ERISA"). (Notice 1.) In the instant Motion, Plaintiff seeks to remand the action to the Superior Court for the County of San Bernardino for lack of subject matter jurisdiction because the breach of contract claim alleged is not preempted by ERISA. (*See* Mot. 1.)

II.     DISCUSSION

   A.     Legal Standard

"Complete preemption removal is an exception to the otherwise applicable rule that a 'plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim.'" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398 (3d Cir. 2004)). "A party seeking removal based on federal question jurisdiction must show . . . that the state-law causes of action are completely preempted by § 502(a)[, 29 U.S.C. § 1132(a),] of ERISA." *Id.* "[A] state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Id.* at 946 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)) (internal alterations omitted). "The two-prong test of *Davila* is in the conjunctive. A state-law cause of action is preempted by § 502(a)(1)(B) only if both prongs of the test are satisfied." *Id.* at 947.

///
///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 17-02278 SJO (SHKx)          DATE:  January 10, 2018

B.   Analysis

To be completely preempted, the first prong under *Davila* requires that the plaintiff was able to bring the claim under ERISA § 502(a)(1)(B) at some point in time. *Davila*, 542 U.S. at 210. Section 502(a)(1)(B) permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA applies to any "employee benefit plan" if it is established or maintained "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1).

The Ninth Circuit has found that a "relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994); *see also Fort Halifax Packing Co. V. Coyne*, 482 U.S. 1 (1987). In *Delaye* the panel considered a contract where the employer's "obligation was either to pay [plaintiff] his regular salary prorated to the date of his termination, if he was terminated for cause; or pay him a fixed monthly amount for twelve to twenty-four months according to a set formula, plus accrued vacation pay and insurance benefits, if he was terminated without cause." *Id.* The court determined that, despite the potential for ongoing payments, this agreement with a single employee did not "rise to the level of an ongoing administrative scheme." *Id.* at 238.

The agreement in this case is similar to that in *Delaye*. It is individualized and does not apply to a larger group of employees, nor does it require Defendant to make anything but a single, up-front calculation followed by regular, standard payments over a period of time. In his complaint, Plaintiff essentially seeks two items: (1) an up-front, lump sum payment of the Longevity Severance Payment and (2) continued payment of his existing salary and benefits for one year following his termination.

1.   Longevity Severance Payment

The Longevity Severance Payment, while perhaps complex to calculate, does not require an ongoing administrative scheme because it is a one-time, individualized calculation. *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (Finding that when an "employer was simply required to make a single arithmetical calculation to determine the amount of severance benefits," there was no "plan" for the purposes of ERISA).

Defendant contends that there are "complex provisions requiring managerial involvement and discretion," and relies on the Ninth Circuit's decision in *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992). (Mot. 9.) The plan at issue in that case, however, only came into effect if the covered employee was terminated and the *employer* determined that she was not offered "substantially equivalent" employment. *Id.* at 1324. It was this determination which the court found to require ongoing administrative analysis because it placed the ability to both determine the

eligibility for and administrate the plan. *Id.* ("The full extent of the program's discretion [] lies in the phrase '[t]he *determination . . . will be made by [employer]* upon consideration of whether the new position . . . has responsibilities *similar to those of your current position.*'") There is no such discretion at issue in this case. Instead, as in *Delaye* and *Fort Halifax*, the severance calculation is "a straightforward computation of a one-time obligation." *Dalaye*, 39 F.3d at 237. Defendant must simply calculate the value of Plaintiff's salary and fringe benefits and multiply this number by 1.68.[1]

While Defendant identifies several factors which it claims require some modicum of discretion, none of these provide Defendant with the authority to evaluate and determine facts—the touchstone for discretion. *Id.* at 1325. As mentioned above, the amount of Plaintiff's salary and fringe benefits is simply a mathematical calculation, as is the Defendant's net sales in a given year, and the value of fringe benefits. While Defendant does have discretion to determine the reason for Plaintiff's termination, "this minimal quantum of discretion [is in]sufficient to turn a severance agreement into an ERISA plan." *Velarde*, 105 F.3d at 1317. This is particularly so when, as here, the agreement applies only to a single employee.

  2. <u>Ongoing Severance Benefits</u>

Similarly, there is no need for a scheme to administer the ongoing severance benefits because, "there is nothing discretionary about the timing, amount or form of the payment." *Delaye*, 39 F.3d at 237. The only ongoing components of Plaintiff's severance are (1) one years' payment of Plaintiff's regular salary at the time of his termination; (2) one years' continuation of benefits provided at the time of Plaintiff's termination; and (3) continued payment, through January 31, 2021, of $1,396.61 per month—the amount of Defendant's half of the split life insurance policy premium. "Sending [Plaintiff], a single employee, a check every month plus continuing to pay his insurance premiums for the time specified in the [Employment Agreement] does not rise to the level of an ongoing administrative scheme." *Id.*

In support for their argument that the benefit requires discretion, Defendants point to the provision providing Plaintiff "the right to have the Company pay Company's portion of the Split Dollar Arrangement" and note that the 2015 Amendment to the EBA cancelled the Split Dollar Arrangement. This, however, does not present an issue of employer discretion, but rather one of contract interpretation. Nowhere in the EA is Defendant given the authority to construe its terms. Because Defendant has failed to show that there is any need for an ongoing administrative

---

[1] Defendant notes that there are conflicting provisions in the EA regarding whether the salary calculation is based on the seventh year after execution of the EA or the year before termination. While this does introduce ambiguity into the contract, the resolution of this conflict is not placed within the discretion of Defendant, but rather presents an issue of contract interpretation for the courts.

scheme to oversee Plaintiff's severance package, the Court finds that Plaintiff was not able to bring his claim under ERISA § 502(a)(1)(B).

Because the *Davila* test is conjunctive and the Court has determined that this action fails the first prong, it need not analyze the second. Because there is no ERISA preemption here, the Court lacks subject matter jurisdiction and this case must be **REMANDED** to state court.

III.    RULING

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Remand. This case is **REMANDED** to the Superior Court for San Bernardino County. The Court **DENIES AS MOOT** Defendant Baker's Burgers, Inc.'s Motion to Dismiss Complaint or, in the alternative, Motion to Strike (ECF No.12.). This action shall close.

IT IS SO ORDERED.